## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN SCIENCE & ENGINEERING, INC., | |
| *Plaintiff*, | Case No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| VIKEN DETECTION CORP., | |
| *Defendant*. | |

## COMPLAINT FOR PATENT INFRINGEMENT

American Science & Engineering, Inc. ("AS&E") complains against Viken Detection Corp. ("Viken") as follows:

### THE PARTIES

1.      AS&E is a corporation organized and existing under the laws of Massachusetts, with its principal place of business at 829 Middlesex Turnpike, Billerica, Massachusetts 01821.

2.      Viken is a corporation organized and existing under the laws of Delaware, with its principal place of business at 21 North Avenue, Burlington, Massachusetts 01803. Viken previously was known as Heuresis Corporation.

### JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States of America, Title 35, United States Code §§ 100, *et seq*.

4.      This Court has subject matter jurisdiction over this action per 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Viken because it has its principal place of business in this District.

6.      In addition, this Court has personal jurisdiction over Viken because AS&E is

informed and believes that Viken conducts substantial business in this District with respect to its infringing products. On information and belief, Viken has committed acts of patent infringement in this District, including making, using, offering for sale, and/or selling the accused products in this District and performing methods that infringe AS&E's patents. On further information and belief, Viken has caused, induced and contributed to acts of patent infringement by others in or from this District, including its efforts to induce its actual or potential customers to use the accused products and patented methods.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b). Viken resides in this District at its principal place of business at 21 North Avenue, Burlington, Massachusetts 01803, and employs personnel within and has committed acts of infringement in or from this District, and has induced or contributed to infringement by others in or from this District.

## BACKGROUND
### AS&E

8.      AS&E was founded in 1958 by Dr. Martin Annis, a leading technologist credited with inventing foundational X-ray technologies used around the globe, including backscatter technology and body scanners. Under his leadership, AS&E's core commitment was to nurture and promote innovation. Today, AS&E specializes in the development of security technology using X-ray technologies, including the development, and distribution of X-ray-based inspection and security systems. AS&E provides advanced X-ray-based detection technologies for ports, borders, military, high-threat facilities, and critical infrastructure worldwide.  AS&E's X-ray-based detection systems can be used for the detection of hidden explosives, drugs, and other contraband in, for example, luggage, parcels, cargo, and vehicles. AS&E's X-ray technology also can be used in medical applications and scientific research. AS&E's customers include the United States Government, the U.S. Postal Inspection Service, and the United States Customs and Border

Patrol, as well as non-governmental entities within the U.S. and around the world.

9.      AS&E has developed, manufactured, and sold X-ray-based inspection systems that use two main types of X-ray technology—backscatter and transmission—to inspect luggage, parcels, cargo, and other containers, and to identify any hidden contraband, such as firearms, explosives, or drugs.

10.      AS&E's backscatter products capture X-rays that, rather than passing through the inspected object, are scattered away from the object and back to a near-side detector. AS&E's backscatter-based products direct beams of X-rays at the inspected object and use the detected, backscattered X-rays to create photo-like images revealing the presence and position of organic materials, such as drugs and explosives. AS&E's backscatter product offerings include the MINI Z handheld detector and the CarView and Z Portal whole-vehicle portal scanners.

11.      AS&E owns numerous patents and pending patent applications directed to X-ray backscatter technologies, such as those incorporated in its MINI Z, Z Portal, and CarView systems. Among the patents owned by AS&E are U.S. Patent No. 8,300,763 (the "'763 Patent"), U.S. Patent No. 7,505,562 (the "'562 Patent"), and U.S. Patent No. 7,400,701 (the "'701 Patent").

## AS&E AND DR. ROTHSCHILD

12.      This case involves technologies developed by key AS&E engineers, including a former AS&E scientist—Dr. Peter Rothschild—who eventually left the company to develop competing and infringing products.

13.      AS&E hired Dr. Rothschild out of graduate school at MIT in 1994 to join AS&E's well-established and respected team of scientists. Exhibit A, LinkedIn Profile of Dr. Peter Rothschild at 2.

14.      AS&E invested in the professional growth of Dr. Rothschild and allowed him broad latitude in his job duties.

15.     On Dr. Rothschild's request, AS&E authorized Dr. Rothschild to take two extended sabbaticals, in 2003 to live in India for a year, and in 2012 to "recharge his batteries" by "[e]njoying time with [his] family in Paris" for a year. Ex. A at 2.

16.     AS&E ultimately promoted Dr. Rothschild to the distinguished position of Chief Scientist. In this capacity, Dr. Rothschild was the "[c]hief technology adviser to senior management" at AS&E. Ex. A at 2. As such, Dr. Rothschild reported directly to AS&E's Chief Technology Officer, and was provided access to all of AS&E's confidential research and development programs.

### DR. ROTHSCHILD LEAVES AS&E TO START VIKEN AND COMMERCIALIZE AS&E'S TECHNOLOGIES

17.     Just months after returning from his second sabbatical, Dr. Rothschild resigned his position at AS&E. Ex. A at 1-2. Unbeknownst to AS&E, at the time of his resignation, Dr. Rothschild had already founded Viken's predecessor—Heuresis Corporation— to directly compete against his former employer. Ex. A at 1.

18.     Dr. Rothschild presently serves as Viken's Chief Technology Officer (CTO). On information and belief, Dr. Rothschild possesses an ownership stake in Viken, including a substantial proportion of Viken's outstanding shares.  Dr. Rothschild has described himself as "a principal of Viken" in court filings. *See Viken Detection Corp. v. Paul Bradshaw*, 19-cv-12034, D.I. 15, ¶ 13 (D. Mass. Dec. 6, 2019).

19.     Like AS&E, Viken focuses on the design and sale of X-ray-based security systems. Ex. A at 1. Viken markets X-ray-based systems that directly compete against AS&E, including inspection systems leveraging X-ray backscatter techniques to inspect vehicles entering the United States.

20.     Viken recently began offering for sale and marketing backscatter X-ray systems

that scan vehicles from the top, sides, and bottom (undercarriage). Viken markets these systems as the Osprey-UVX and Osprey-EVX. The Osprey-UVX and Osprey-EVX ("Accused Viken Scanners") are the infringing products at issue in this case.

21.     In his capacity as Viken's CTO, on information and belief, Dr. Rothschild oversees all product design and development for Viken, including the design and development of the Accused Viken Scanners that directly compete against AS&E products.

22.     AS&E is bringing the present action to defend its intellectual property and to assert its patent rights against Viken and Dr. Rothschild.  In an earlier-filed Massachusetts state court action, AS&E alleges that Viken and Dr. Rothschild have used trade secrets stolen from AS&E, including software developed by Dr. Rothschild and others while employed by AS&E.  See *Am. Sci. & Eng'g v. Viken Detection Corp.* et al., C.A. No. 2081CV00655 (Mass. Superior Ct.), D.I. 1. In the Massachusetts action, Dr. Rothschild responds, with no corroborating evidence, that AS&E verbally gave him permission to take the software.

23.     In the Massachusetts action, AS&E also alleges that Dr. Rothschild breached his fiduciary and contractual duties to AS&E, including, while employed by AS&E, by causing AS&E to expend funds in development efforts for the benefit of Viken's products through a series of falsehoods by Dr. Rothschild.

### THE ACCUSED VIKEN SCANNERS

24.     Viken recently began making, using, marketing, offering for sale, and selling the Accused Viken Scanners, both on their own and in combination with each other.

25.     Specifically, Viken announced that it would launch the Osprey-EVX and begin demonstrations of its "new drive-through portal scanner" in "early 2020" as a "complement" to the Osprey-UVX. Exhibit B, Viken Press Release (Nov. 12, 2019) at 1.

26.     Viken's Osprey-EVX "portal" system is a multi-view backscatter X-ray portal,

meaning it provides views from the top and sides of the vehicle. The Osprey-EVX portal system can be used in "primary" lanes for passenger vehicles.

27.     Viken's Osprey-EVX includes, on information and belief, an array of at least three distinct X-ray sources—one for the top perspective, one for the right-side perspective, and one for the left-side perspective. These X-ray sources are configured to illuminate the vehicle with radiation during inspection according to a timing-sequence configured by Viken.

28.     The X-ray sources in the Osprey-EVX use X-ray "pencil beams" to illuminate the inspected vehicle. The Osprey-EVX uses X-ray "pencil beams" over alternatives, such as fan beams, to minimize radiation exposure to the occupants of the vehicle being inspected.

29.     Viken's Osprey-EVX uses X-ray beams to "sweep" the vehicle from each of the top, right, and left perspectives.

30.     During scanning, Viken's Osprey-EVX relies on relative motion between the X-ray scanners and the vehicle under inspection.

31.     Viken's Osprey-EVX includes one or more detectors to detect X-rays backscattered from the vehicle during scanning. On information and belief, Viken's Osprey-EVX accepts and/or rejects scintillation detections depending upon the position of the sweep of the X-ray beam. Likewise, on information and belief, Viken's Osprey-EVX weights the intensity of scintillation detections based on the position of a sweep of the X-ray beam.

32.     On information and belief, Viken's Osprey-EVX produces a two-dimensional image of the vehicle being scanned based on backscattered X-rays. These two-dimensional images are created for each perspective of the scan—that is, the top perspective, the left-side perspective, and the right-side perspective of the vehicle.

33.     The top perspective of the Osprey-EVX is orthogonal to the left-side and right-side

perspectives.

34.     The top perspective of the Osprey-EVX is adjacent to the left-side and right-side perspectives.

35.     The top perspective of the Osprey-EVX rests on a plane that is not shared with either the left-side or right-side perspectives, such as the plane defined by the length and width of the Osprey-EVX scanner.

36.     Viken also offers the Osprey-UVX under-vehicle scanning system for sale, and has sold at least four Osprey-UVX systems to the United States Customs and Border Patrol ("U.S. CBP") for installation at border crossings in Laredo and Brownsville, TX.

37.     Like the Osprey-EVX, Viken's Osprey-UVX includes an X-ray source for illuminating the inspected vehicle with X-rays according a timing-sequence configured by Viken.

38.     The X-ray sources in the Osprey-UVX use X-ray "pencil beams" to illuminate the vehicle under inspection. The Osprey-UVX uses X-ray "pencil beams" instead of alternatives, such as fan beams, to minimize radiation exposure to the occupants of the vehicle being inspected.

39.     Viken's Osprey-UVX uses X-ray beams to "sweep" the vehicle from the bottom perspective.

40.     During scanning, Viken's Osprey-UVX also relies on relative motion between the X-ray scanner and the vehicle under inspection.

41.     Viken's Osprey-UVX includes one or more detectors to detect X-rays backscattered from the vehicle during scanning. On information and belief, Viken's Osprey-UVX also accepts and/or rejects scintillation detections depending upon the position of the sweep of the X-ray beam. Likewise, on information and belief, Viken's Osprey-UVX also weights the intensity of scintillation detections based on the position of a sweep of the X-ray beam.

42.     On information and belief, Viken's Osprey-UVX produces a two-dimensional image of the vehicle being scanned based on backscattered X-rays. The two-dimensional image is created from the vehicle's bottom perspective:



https://www.krgv.com/videos/cbp-to-enhance-scanning-technology-at-southern-border-land-ports/ (last accessed on October 19, 2020).



https://www.foxnews.com/tech/border-technology-combat-illegal-smuggling (last accessed on October 19, 2020).

43.     The bottom perspective of the Osprey-UVX is configured to be arranged orthogonal to the left-side and right-side perspectives of the Osprey-EVX.

44.     The bottom perspective of the Osprey-UVX is configured to be arranged adjacent

to the left-side and right-side perspectives of the Osprey-EVX.

45.     The bottom perspective of the Osprey-UVX is configured to be arranged on a plane that is not shared with either the left-side or right-side perspectives of the Osprey-EVX, such as the plane defined by the length and width of the Osprey-UVX scanner.

46.     Viken touts the Accused Viken Scanners as having only one competitor for *backscatter*-based X-ray scanning.  That competitor is AS&E:

> Over the last two years, Viken has spent well over $15M, which is a very large amount for a $22.5M revenue company, to develop an under-vehicle inspection system. Viken has also filed several patent applications protecting its technology. *See id.* at ¶ 21. Viken has already successfully bid four under-vehicle systems to be installed in June for U.S. CBP, has submitted a bid to U.S. CBP for a demonstration vehicle portal inspection system, and is preparing to submit bids to compete for U.S. CBP contracts worth more than $570 million for portal products – all planned to be awarded by September 2020. *See id.* at ¶ 20-23. While several transmission X-ray makers are also competing for these contracts, to Viken's knowledge only AS&E and Viken are offering a *backscatter* X-ray portal (which has been called an ideal technology for concealed drug identification). *See id.* at ¶ 23.

Exhibit C, *Am. Sci. and Eng'ng, Inc. v. Viken Detection Corp.* et al., C.A. No. 2081CV00655 (Mass. Sup. Ct. Mar. 19, 2020), D.I. 13 at 15-16 (emphasis added).

47.     When the Osprey-UVX is used in combination with the Osprey-EVX, the combined portal uses X-ray backscatter technology to provide scanning from four distinct perspectives—the top and sides (Osprey-EVX) as well as from the bottom (Osprey-UVX), *see, e.g.*,:



https://www.foxnews.com/tech/border-technology-combat-illegal-smuggling    at    01:12-01:22
("You can stay in your vehicle, and you can drive either over or through a portal. And you'll be
able to get a complete image of the vehicle.") (last visited Oct. 19, 2020).

48.    On information and belief, Viken has offered to sell the Osprey-EVX, including to
the U.S. CBP. On further information and belief, Viken has offered to sell and has sold the Osprey-
UVX to the U.S. CBP for use with the Osprey-EVX. *See* Ex. C at 15; Exhibit D, Affidavit of
Viken's CEO Mr. James Ryan at 5–6, ¶ 22.

49.    On information and belief, Viken's Osprey-UVX is not a staple article or
commodity of commerce suitable for substantial noninfringing use. Rather, Viken's Osprey-UVX
represents a material component of AS&E's patented inventions, including a material component
for use in practicing AS&E's patented processes, and one which Viken knowingly made and
adapted for use to infringe AS&E's patented inventions, including because the Osprey-UVX
cannot be sold to, or used by, the U.S. CBP without additional scanning from the top, right-side,
and left-side perspectives of the vehicle.

THE ASSERTED PATENTS

50.    The '763 Patent, entitled "Spatial Sequence Backscatter Portal," was duly and
legally issued by the U.S. Patent and Trademark Office on October 30, 2012. AS&E is the owner

10

by assignment of all right, title, and interest in and to the '763 Patent, including all rights to seek legal and equitable relief for any and all infringement thereof. The '763 Patent is valid and enforceable. A true and correct copy of the '763 Patent is attached as Exhibit E.

51.     The '562 Patent, entitled "X-ray Imaging of Baggage and Personnel Using Arrays of Discrete Sources and Multiple Collimated Beams," was duly and legally issued by the U.S. Patent and Trademark Office on March 17, 2009. AS&E is the owner by assignment of all right, title, and interest in and to the '562 Patent, including all rights to seek legal and equitable relief for any and all infringement thereof. The '562 Patent is valid and enforceable. A true and correct copy of the '562 Patent is attached as Exhibit F.

52.     The '701 Patent, entitled "Backscatter Inspection Portal," was duly and legally issued by the U.S. Patent and Trademark Office on July 15, 2008. AS&E is the owner by assignment of all right, title, and interest in and to the '701 Patent, including all rights to seek legal and equitable relief for any and all infringement thereof. The '701 Patent is valid and enforceable. A true and correct copy of the '701 Patent is attached as Exhibit G.

### VIKEN AND/OR DR. ROTHSCHILD WERE AWARE OF THE ASSERTED PATENTS AND INFRINGEMENT OF THE SAME

53.     Prior to the filing of this lawsuit, Viken had knowledge of the '562, '763, and '701 Patents (collectively, "the Asserted Patents").

54.     Prior to the filing of this lawsuit, Viken also was made aware by AS&E that AS&E contends that the Accused Viken Scanners infringe the Asserted Patents.

55.     Despite such knowledge and awareness, Viken continues to make, use, sell, offer for sale, and import the Accused Viken Scanners in willful, wanton, malicious, and flagrant violation of AS&E's protected patent rights.

56.     Dr. Rothschild—Viken's founder and CTO—has known about the inventions

protected by the '562 Patent since at least April 2006, when he personally assisted in the preparation and filing of the application that matured into that patent. Dr. Rothschild's personal knowledge and intimate understanding of the inventions claimed therein is attributable to Viken, for at least the reasons discussed in ¶¶ 12–21 above.

57.     Likewise, AS&E notified Viken of its infringement of the '562 Patent. Viken has refused to cease its direct and indirect infringements as detailed in ¶¶ 108–139 below. Dr. Rothschild and Viken are estopped from contesting the validity of the '562 Patent in this proceeding and, to date, have failed to articulate to AS&E any reason why the Accused Viken Scanners do not infringe.

58.     On information and belief, Viken's founder Dr. Rothschild has known about the inventions protected by the '701 Patent from at least as early as his resignation from AS&E in October 2013 due to his personal involvement with AS&E's technology and product development activities. Dr. Rothschild's personal knowledge and intimate understanding of the inventions claimed therein is attributable to Viken, for at least the reasons discussed in ¶¶ 12–21 above.

59.     AS&E notified Viken of its infringement of the '763 and '701 Patent claims. Viken has refused to cease its direct and indirect infringements as detailed in ¶¶ 62–106 and 141–178 below. Dr. Rothschild and Viken have failed to articulate to AS&E any reason why the Accused Viken Scanners do not infringe.

60.     Despite Viken's knowledge of the Asserted Patents, as well as AS&E's specific charges of infringement made before filing this litigation, Viken continues to make, use, sell, offer for sale, and, potentially, import products that infringe AS&E's patents despite an objectively high likelihood that Viken's actions constitute infringement of one or more valid patents.

## COUNT I
### (Infringement of the '763 Patent)

61.     AS&E incorporates by reference ¶¶ 1–60 of this Complaint as if fully set forth herein.

62.     On information and belief, Viken has been, and currently is, directly infringing at least claims 1 and 8 of the '763 Patent by performing the steps of the claimed methods in the United States (including this District) using the Osprey-EVX system, alone or in combination with the Osprey-UVX. These acts of infringement are literally infringing, or infringing under the doctrine of equivalents. For instance, Viken's own press releases indicate that it began demonstrating the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX in early 2020, *see* Ex. B at 2 ("In addition to the Osprey-UVX, early in 2020 the company will launch and begin demonstrations of a new drive-through portal scanner, the Osprey-EVX, which will complement the Osprey-UVX.").

63.     On information and belief, Viken has also induced and contributed to acts of accused patent infringement with respect claims 1 and 8 of the '763 Patent.

64.     For example, Viken, with knowledge of the '763 Patent, or by taking deliberate actions to avoid learning of the '763 Patent, induced actual or potential customers (such as the U.S. CBP) to test and use the Osprey-EVX, both alone and in combination with the Osprey-UVX.

65.     Upon information and belief, the U.S. CBP actually has tested the Osprey-EVX, both alone and in combination with the Osprey-UVX, in a manner that resulted in the performance of the methods patented by the '763 Patent because use of the Accused Viken Scanners in the intended and configured manner necessarily infringes the same.

66.     For instance, Viken's assertions in court filings indicate that it is actively offering the Accused Viken Scanners, both individually and together, to the U.S. CBP. On information and

belief, as part of this offering, Viken has used the inventions claimed by the '763 Patent. On further information and belief, Viken likewise has induced the U.S. CBP to use the inventions claimed by the '763 Patent, or otherwise make and use the inventions through combining non-staple articles lacking substantial non-infringing uses, such as the U.S. CBP's installation, testing, and use of the Accused Viken Scanners in accordance with Viken's direction, training, and instruction, *see*:

> Over the last two years, Viken has spent well over $15M, which is a very large amount for a $22.5M revenue company, to develop an under-vehicle inspection system. Viken has also filed several patent applications protecting its technology. *See id.* at ¶ 21. Viken has already successfully bid four under-vehicle systems to be installed in June for U.S. CBP, has submitted a bid to U.S. CBP for a demonstration vehicle portal inspection system, and is preparing to submit bids to compete for U.S. CBP contracts worth more than $570 million for portal products – all planned to be awarded by September 2020. *See id.* at ¶ 20-23. While several transmission X-ray makers are also competing for these contracts, to Viken's knowledge only AS&E and Viken are offering a *backscatter* X-ray portal (which has been called an ideal technology for concealed drug identification). *See id.* at ¶ 23.

Ex. C at 15-16.

> Viken's successes with U.S. CBP threaten AS&E's dominance in the marketplace for "portal" inspection systems. *See id.* at ¶ 15-18. AS&E's primary business is large-scale backscatter X-ray portals, such as its product known as the Z-Portal, and a mobile backscatter X-ray van product, known as the ZBV. *See id.* at ¶ 15. However, today, "secondary" backscatter X-ray inspection portals such as those from AS&E, have three views of the vehicle: from the top, right, and left sides of the vehicle. AS&E's single-view system for passenger vehicles only has one top-down backscatter X-ray view. None of these imaging systems have a view from underneath the vehicle. Based on our experience with handheld imaging systems, working with many drug interdiction officers, and from Viken's meetings with U.S. CBP, it has become clear that, because of this drawback of systems such as those from AS&E, many illicit drugs concealed underneath vehicles pass through inspections undetected. *See id.* at ¶ 18.

Ex. C at 15.

> Demonstrations to U.S. CBP of the capabilities of each competitor's portals will take place over the next few months, and vendors will be awarded the U.S. CBP contract, which is worth more than $100M, by September 2020, based on the latest U.S. CBP budget submitted to Congress.

Ex. D at 5–6, ¶ 22.

67.     The preamble of claim 1 of the '763 Patent recites: "A method for scanning an object in an inspection space comprising." (Ex. E at 8:47-48.)

68.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs a method for scanning an object in an inspection space, for instance (and without limitation) the space contained within a vehicle or the space confined within the portal.

69.     The first limitation of claim 1 of the '763 Patent recites: "(a) scanning the object from a first perspective that is substantially orthogonal to a first plane starting at a first entry point in the inspection space that is adjacent a first edge of the inspection space to establish a first scan line trace of the object from the first perspective." (Ex. E at 8:49-53.)

70.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of scanning the object from a first perspective that is substantially orthogonal to a first plane starting at a first entry point in the inspection space that is adjacent a first edge of the inspection space to establish a first scan line trace of the object from the first perspective.

71.     For instance, and without limitation, the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX scans the object (e.g., the vehicle or the drugs within) from a first perspective (e.g., using the Osprey-EVX, a top perspective, a left perspective, and a right perspective, or, when used with the Osprey-UVX, additionally from a bottom or undercarriage perspective) that is substantially orthogonal to a first plane (e.g., a plane defined by the top or bottom perspectives, as well as the left and right perspectives).

72.     On information and belief, scanning the object starts at a first entry point in the inspection space that is adjacent a first edge of the inspection space at least because the scan is executed using a pencil beam that is swept through the inspection space and the image produced is of an entire vehicle that passes through the portal, *see, e.g.*, Ex. D at 5 ¶ 19.

73.     On information and belief, the pencil beam is swept through the inspection space starting at a first entry point. By sweeping the beam through the inspection space, the Osprey EVX and/or the Osprey-UVX in combination with the Osprey-EVX can create images of the entire top, sides, and/or undercarriage of an object, e.g., a vehicle, *see*:



https://www.krgv.com/videos/cbp-to-enhance-scanning-technology-at-southern-border-land-ports/ (last accessed on October 19, 2020).

74.     The Osprey-EVX (and the Osprey-UVX in combination with the Osprey-EVX)

therefore establishes a first scan line trace (e.g., a path of the pencil beam) of the object from the first perspective.

75.     The second limitation of claim 1 of the '763 Patent recites: "(b) scanning the object from a second perspective that is substantially orthogonal to a second plane that is adjacent to but not co-planar with the first plane, starting at a second entry point on the second plane that is adjacent a second edge between the first plane and the second plane, to establish a second scan line trace of the object from the second perspective." (Ex. E at 8:54-60.)

76.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of scanning the object from a second perspective that is substantially orthogonal to a second plane that is adjacent to but not co-planar with the first plane, starting at a second entry point on the second plane that is adjacent a second edge between the first plane and the second plane, to establish a second scan line trace of the object from the second perspective.

77.     For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX scan the object (e.g., the vehicle or the drugs within) from a second perspective different from the first perspective described above in claim element 1(a) (e.g., another of looking at the top, looking at the left side, looking at the right side, or looking at the bottom) that is substantially orthogonal to a second plane different from the second plane above in claim element 1(a) (e.g., another of the plane of the top, the plane of the left side, the plane of the right side, or the plane of the bottom). The second plane can be selected such that it is adjacent to but not co-planar with the first plane. For instance, the bottom plane is adjacent to but not co-

planar with each of the left and right planes; the left plane is adjacent to but not co-planar with each of the top and bottom planes, etc.

78.     On information and belief, scanning the object starts at a second entry point in the inspection space that is adjacent a second edge of the inspection space at least because the scan is executed using a pencil beam that is swept through the inspection space and the image produced is of an entire vehicle that passes through the portal. (*See supra* ¶ 73).

79.     On information and belief, the second edge is between the first plane and the second plane. For instance, when the scan starts at an edge, a mapping to a first plane (e.g., top, bottom, left, right) and a second plane (e.g., another of top, bottom, left, right) may be selected such that this second edge is between the two planes.

80.     The Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX therefore establishes a second scan line trace (e.g., a path of the pencil beam) of the object from the second perspective.

81.     The third limitation of claim 1 of the '763 Patent recites: "(c) providing relative motion between the object and the first scan line trace and the second scan line trace." (Ex. E at 8:61-62.)

82.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of providing relative motion between the object and the first scan line trace and the second scan line trace.

83.     For instance, and without limitation, Viken and its customers configure the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX as a portal for a vehicle to pass

through such that there is relative motion between the vehicle and the first and second scan line

traces, *see* Ex. B at 2 ("In addition to the Osprey-UVX, early in 2020 the company will launch and

begin demonstrations of a new drive-through portal scanner, the Osprey-EVX, which will

complement the Osprey-UVX."); *see also*



https://www.foxnews.com/tech/border-technology-combat-illegal-smuggling (last accessed on
October 19, 2020).

        84.    The fourth limitation of claim 1 of the '763 Patent recites: "repeating step (a), step

(b), and step (c) at least once such that the repetition of step (a) produces a first two-dimensional

image of the object comprising multiple first image scan lines from the first perspective and step

(b) produces a second two-dimensional image of the object comprising multiple second image scan lines from the second perspective." (Ex. E at 8:63-9:2.)

85.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of repeating step (a), step (b), and step (c) at least once such that the repetition of step (a) produces a first two-dimensional image of the object comprising multiple first image scan lines from the first perspective and step (b) produces a second two-dimensional image of the object comprising multiple second image scan lines from the second perspective.

86.     For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX repeat steps (a)-(c) to produce a two-dimensional image of the object from each of the perspectives (e.g., top view, bottom view, left view, and right view), *see*:



https://www.krgv.com/videos/cbp-to-enhance-scanning-technology-at-southern-border-land-ports/
(last accessed on October 19, 2020).

> Viken's successes with U.S. CBP threaten AS&E's dominance in the marketplace for "portal" inspection systems. *See id.* at ¶ 15-18. AS&E's primary business is large-scale backscatter X-ray portals, such as its product known as the Z-Portal, and a mobile backscatter X-ray van product, known as the ZBV. *See id.* at ¶ 15. However, today, "secondary" backscatter X-ray inspection portals such as those from AS&E, have three views of the vehicle: from the top, right, and left sides of the vehicle. AS&E's single-view system for passenger vehicles only has one top-down backscatter X-ray view. None of these imaging systems have a view from underneath the vehicle. Based on our experience with handheld imaging systems, working with many drug interdiction officers, and from Viken's meetings with U.S. CBP, it has become clear that, because of this drawback of systems such as those from AS&E, many illicit drugs concealed underneath vehicles pass through inspections undetected. *See id.* at ¶ 18.

Ex. C at 15.

87.     The preamble of Claim 8 of the '763 Patent recites: "A method for scanning an object in an inspection space comprising." (Ex. E at 9:32-33).

88.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (and other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs a method for scanning an object in an inspection space. (*See supra* ¶ 68).

89.     The first limitation of Claim 8 of the '763 Patent recites: "(a) scanning the object from a first perspective that is substantially orthogonal to a first plane starting at a first entry point in the inspection space that is adjacent a first edge of the inspection space to establish a first scan line trace of the object from the first perspective." (Ex. E at 9:34-10:3.)

90.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in

combination with the Osprey-EVX, performs the method step of scanning the object from a first perspective that is substantially orthogonal to a first plane starting at a first entry point in the inspection space that is adjacent a first edge of the inspection space to establish a first scan line trace of the object from the first perspective. (*See supra* ¶¶ 70–74).

91.     The second limitation of Claim 8 of the '763 Patent recites: "(b) scanning the object from a second perspective that is substantially orthogonal to a second plane where the second perspective is opposed to the first perspective, starting the scanning at a second entry point on the second plane that is diagonally opposed across the inspection space from the first entry point, to establish a second scan line trace of the object from the second perspective, wherein step (a) and step (b) are initiated at approximately the same time." (Ex. E at 10:4-12.)

92.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of scanning the object from a second perspective that is substantially orthogonal to a second plane where the second perspective is opposed to the first perspective, starting the scanning at a second entry point on the second plane that is diagonally opposed across the inspection space from the first entry point, to establish a second scan line trace of the object from the second perspective, wherein step (a) and step (b) are initiated at approximately the same time.

93.     For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX scans the object (e.g., the vehicle or the drugs within) from a second perspective different from the first perspective above in claim element 8(a) (e.g., another of looking at the top, looking at the left side, looking at the right side, or looking at the bottom)

that is substantially orthogonal to a second plane different from the second plane above in claim element 8(a) (e.g., another of the plane of the top, the plane of the left side, the plane of the right side, or the plane of the bottom). The second perspective can be selected such that it is opposed to the first perspective. For instance, looking at the top is opposed to looking at the bottom (in the Osprey-UVX used in combination with the Osprey-EVX), and vice versa; looking at the left is opposed to looking at the right (in the Osprey-EVX or in the Osprey-UVX used in combination with the Osprey-EVX), and vice versa.

94.     On information and belief, scanning the object starts at a second entry point at least because the scan is executed using a pencil beam and the image produced is of an entire vehicle that passes through the portal. (*See supra* ¶ 73).

95.     On information and belief, the second entry point is diagonally opposed across the inspection space from the first entry point, at least because this would reduce interference at opposing detectors in areas where the vehicle is not blocking (and scattering) the scanning pencil beam.

96.     The Osprey-EVX, and the Osprey-UVX in combination with the Osprey-EVX, therefore establishes a second scan line trace (e.g., a path of the pencil beam) of the object from the second perspective.

97.     The Osprey-EVX, and the Osprey-UVX in combination with the Osprey-EVX, initiates step (a) and step (b) at approximately the same time, for instance, to get a complete image of the vehicle as the vehicle drives through the portal. (*See, e.g.*, https://www.foxnews.com/tech/border-technology-combat-illegal-smuggling at 01:12-01:22 ("You can stay in your vehicle, and you can drive either over or through a portal. And you'll be able to get a complete image of the vehicle.") (last visited Oct. 19, 2020).

98.     The third limitation of Claim 8 of the '763 Patent recites: "(c) providing relative motion between the object and the first scan line trace and the second scan line trace." (Ex. E at 10:13-14.)

99.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of providing relative motion between the object and the first scan line trace and the second scan line trace.

100.     For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX provide relative motion between the object (e.g., the vehicle or drugs within) and the first and second scan line traces. For example, Viken configures the Osprey-EVX, and the Osprey-UVX in combination with the Osprey-EVX, as a portal for a vehicle to pass through such that there is relative motion between the vehicle and the Osprey-EVX, and the Osprey-UVX in combination with the Osprey-EVX, first and second scan line traces. (*See supra* ¶ 83).

101.     The fourth limitation of Claim 8 of the '763 Patent recites: "(d) repeating step (a), step (b), and step (c) at least once such that the repetition of step (a) produces a first two-dimensional image of the object comprising multiple first image scan lines from the first perspective and step (b) produces a second two-dimensional image of the object comprising multiple second image scan lines from the second perspective." (Ex. E at 10:15-21.)

102.     Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in

combination with the Osprey-EVX, performs the method step of repeating step (a), step (b), and step (c) at least once such that the repetition of step (a) produces a first two-dimensional image of the object comprising multiple first image scan lines from the first perspective and step (b) produces a second two-dimensional image of the object comprising multiple second image scan lines from the second perspective.

103.     For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX repeat steps (a)-(c) to produce a two-dimensional image of the object from each of the perspectives (e.g., top view, bottom view, left view, and right view.) (*See supra* ¶ 86).

104.     AS&E has suffered and continues to suffer damages and irreparable harm as a result of Viken's past and ongoing infringement of the '763 Patent.

105.     Viken's infringement of the '763 Patent has been, is, and continues to be willful, including Viken's willful infringement of at least claims 1 and 8. (*See supra* ¶¶ 53–55, 59–60). Viken has known about the '763 Patent (or was willfully blind to acquiring knowledge without explanation), as well as AS&E's infringement allegations, but nevertheless willfully continued its infringing activities.

106.     Unless Viken's infringement is enjoined, AS&E will continue to be damaged and irreparably harmed by Viken's past and on-going acts of infringement, including, for example, through price erosion, loss of industry goodwill, impact to brand recognition and value, and the loss of irreplaceable business opportunities.

## COUNT II
### (Infringement of the '562 Patent)

107.     AS&E incorporates by reference ¶¶ 1–106 of this Complaint as if fully set forth herein.

108.    Upon information and belief, Viken has been, and currently is, directly infringing at least claims 1 and 12 of the '562 Patent by performing the steps of the claimed methods in the United States (including this District) using the Osprey-EVX system, alone or in combination with the Osprey-UVX system. These acts of infringement are literally infringing, or infringing under the doctrine of equivalents. For instance, Viken's own press releases indicate that it began demonstrating the Osprey-EVX, and the Osprey-UVX in combination with the Osprey-EVX, in early 2020, *see* Ex. B at 2 ("In addition to the Osprey-UVX, early in 2020 the company will launch and begin demonstrations of a new drive-through portal scanner, the Osprey-EVX, which will complement the Osprey-UVX.").

109.    On information and belief, Viken has also induced and contributed to acts of accused patent infringement with respect to at least claims 1 and 12 of the '562 Patent.

110.    For example, Viken, with knowledge of the '562 Patent, or by taking deliberate actions to avoid learning of the '562 Patent, induced actual or potential customers (such as the U.S. CBP) to test and use the Osprey-EVX, both alone and in combination with the Osprey-UVX.

111.    Upon information and belief, the U.S. CBP actually has actually tested the Osprey-EVX, both alone and in combination with the Osprey-UVX, in a manner that resulted in the performance of the methods patented by the '562 Patent because use of the Accused Viken Scanners in the intended and configured manner necessarily infringes the same. For instance, Viken's assertions in court filings indicate that it is actively offering the Accused Viken Scanners, both individually and together, to the U.S. CBP. On information and belief, as part of this offering, Viken has used the inventions claimed by the '562 Patent. On further information and belief, Viken likewise has induced the U.S. CBP to use the inventions claimed by the '562 Patent, or otherwise make and use the inventions through combining non-staple articles lacking substantial non-

infringing uses, such as the U.S. CBP's installation, testing, and use of the Accused Viken Scanners in accordance with Viken's direction, training, and instruction, *see, e.g.*, Ex. C. at 15–16.

112. The preamble of claim 1 of the '562 Patent recites: "A method for imaging an object, the method comprising." (Ex. F at 7:2.)

113. Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs a method for imaging an object, for instance, and without limitation, a vehicle, or drugs or other contraband within the vehicle, *see*:



https://www.krgv.com/videos/cbp-to-enhance-scanning-technology-at-southern-border-land-ports/ (last accessed on October 19, 2020).

114. The first limitation of claim 1 of the '562 Patent recites: "activating an array of discrete X-ray sources in a prescribed temporal pattern so as to illuminate the object with a beam varying in spatial orientation." (Ex. F at 7:3-5.)

115. Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the

U.S. CBP to turn on, use, and test the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of activating an array of discrete X-ray sources in a prescribed temporal pattern so as to illuminate the object with a beam varying in spatial orientation.

116.    For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX activates an array of discrete X-ray sources (e.g., an array comprising at least one discrete X-ray source located at each of the top, left, and right side of the Osprey-EVX portal, or at least one discrete X-ray source located at each of the top, bottom, left, and right side of the Osprey-UVX used in combination with the Osprey-EVX), *see, e.g.*, Ex. C at 15.

117.    The array of discrete X-ray sources activate in a prescribed temporal pattern so as to illuminate the object with a beam varying in spatial orientation. For instance, and without limitation, each X-ray pencil beam moves side-to-side in a prescribed temporal pattern, *see, e.g.*, Ex. D at 5 ¶ 19.

118.    On information and belief, the X-ray pencil beam moves side-to-side in a prescribed temporal pattern because the thin beam must be swept across the inspection space so as to create an image showing the full breadth of the object passing through the portal.

119.    The second limitation of claim 1 of the '562 Patent recites: "detecting with a detector X-rays of the beam scattered after interaction with the object and generating a detector signal" (Ex. F at 7:6-8.)

120.    Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of detecting with a detector X-rays

of the beam scattered after interaction with the object and generating a detector signal.

121.    For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX detect, with a detector, X-rays of the beam scattered after interaction with the object. The detectors generate a detector signal that is used to create a two-dimensional image of the top-, left-, right-, and bottom-views of the vehicle, *see, e.g.*, Ex. C at 15.

122.    The third limitation of claim 1 of the '562 Patent recites: "constructing an image of the object based on the time variation of the detector signal." (Ex. F at 7:9-10.)

123.    On information and belief, Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (and other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of constructing an image of the object based on the time variation of the detector signal.

124.    For instance, and without limitation, the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX construct an image of the object, *see, e.g.*:



https://www.krgv.com/videos/cbp-to-enhance-scanning-technology-at-southern-border-land-ports/ (last accessed on October 19, 2020).

125.    On information and belief, the X-ray detectors record the intensity of scattered x-

rays as a function of the beam position on a target object as the object moves through the plane of the scanning pencil beam.

126.    The preamble of claim 12 of the '562 Patent recites: "A method for inspecting an object, the method comprising." (Ex. F at 8:19-20.)

127.    Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs a method for inspecting an object, for instance, and without limitation, a vehicle or drugs or other contraband within the vehicle.

128.    The first limitation of claim 12 of the '562 Patent recites: "illuminating the object with a plurality of linear arrays of discrete sources of penetrating radiation." (Ex. F at 8:21-22).

129.    Viken, by testing and demonstrating the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of illuminating the object with a plurality of linear arrays of discrete sources of penetrating radiation.

130.    For instance, and without limitation, the Osprey-UVX in combination with the Osprey-EVX illuminates an object (e.g., a vehicle) with a plurality of linear arrays of discrete sources (e.g., a linear array comprising a discrete X-ray source located at each of the top and bottom side of the Osprey-UVX/Osprey-EVX scanner portal and a linear array comprising a discrete X-ray source located at each of the left and right side of the Osprey-EVX/Osprey-UVX scanner portal). The sources are of penetrating radiation (e.g., X-rays), *see, e.g.*, Ex. C at 15; Ex. D at 5 ¶ 19.

131.     The second limitation of claim 12 of the '562 Patent recites: "generating a scatter signal based upon detection of penetrating radiation scattered by the inspected object." (Ex. F at 8:23-24.)

132.     Viken, by testing and demonstrating the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of generating a scatter signal based upon detection of penetrating radiation scattered by the inspected object.

133.     For instance, and without limitation, the Osprey-UVX in combination with the Osprey-EVX generates a scatter signal based upon detection of penetrating radiation scattered by the inspected object (e.g., the vehicle). The scatter signal is used to create a two-dimensional image of the top-, left-, right-, and bottom-views of the vehicle, *see, e.g.*, Ex. C at 15; Ex. D at 5 ¶ 19.

134.     The third limitation of claim 12 of the '562 Patent recites: "processing the scatter signal to generate an image of the object." (Ex. F at 8:26-27.)

135.     Viken, by testing and demonstrating the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP to turn on, use, and test the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of processing the scatter signal to generate an image of the object.

136.     For instance, and without limitation, the Osprey-UVX in combination with the Osprey-EVX generates two-dimensional image of the top-, left-, right-, and bottom-views of the vehicle, *see, e.g.*, Ex. C at 15; and



https://www.krgv.com/videos/cbp-to-enhance-scanning-technology-at-southern-border-land-ports/ (last accessed on October 19, 2020).

137.    AS&E has suffered and continues to suffer damages and irreparable harm as a result of Viken's past and ongoing infringement of the '562 Patent.

138.    Viken's infringement of the '562 Patent has been, is, and continues to be willful, including Viken's willful infringement of at least claims 1 and 12. (*See supra* ¶¶ 53–57, 60). Viken has known about the '562 Patent (or was willfully blind to acquiring knowledge without explanation), as well as AS&E's infringement allegations, but nevertheless willfully continued its infringing activities.

139.    Unless Viken's infringement is enjoined, AS&E will continue to be damaged and irreparably harmed by Viken's past and ongoing acts of infringement, including, for example, through price erosion, loss of industry goodwill, impact to brand recognition and value, and the loss of irreplaceable business opportunities.

## COUNT III
### (Infringement of the '701 Patent)

140.    AS&E incorporates by reference ¶¶ 1–139 of this Complaint as if fully set forth herein.

141.    Upon information and belief, Viken has been, and currently is, directly infringing at least claim 1 of the '701 Patent by making, using, selling, or importing the claimed systems in the United States (including this District) in the form of the Osprey-EVX system, alone or in combination with the Osprey-UVX system. Upon information and belief, Viken has been, and currently is, directly infringing at least claim 11 of the '701 Patent by performing the steps of the claimed methods in the United States (including this District) using the Osprey-EVX system, alone or in combination with the Osprey-UVX system. These acts of infringement are literally infringing, or infringing under the doctrine of equivalents. For instance, Viken's own press releases indicate that it began demonstrating the Osprey-EVX, and the Osprey-UVX in combination with the Osprey-EVX, in early 2020, *see* Ex. B at 2 ("In addition to the Osprey-UVX, early in 2020 the company will launch and begin demonstrations of a new drive-through portal scanner, the Osprey-EVX, which will complement the Osprey-UVX.").

142.    On information and belief, Viken has also induced and contributed to acts of accused patent infringement with respect to at least claims 1 and 11 of the '701 Patent.

143.    For example, Viken, with knowledge of the '701 Patent, or by taking deliberate actions to avoid learning of the '701 Patent, induced actual or potential customers (such as the U.S. CBP) to test and use the Osprey-EVX, both alone and in combination with the Osprey-UVX.

144.    Upon information and belief, the U.S. CBP actually has actually tested the Osprey-EVX, both alone and in combination with the Osprey-UVX, in a manner that resulted in the making of the systems patented by the '701 Patent, as well as the performance of the methods or use of the systems patented by the '701 Patent because use of the Accused Viken Scanners in the intended and configured manner necessarily infringes the same. For instance, Viken's assertions in court filings indicate that it is actively offering the Accused Viken Scanners, both individually and

together, to the U.S. CBP. On information and belief, as part of this offering, Viken has used the inventions claimed by the '701 Patent. On further information and belief, Viken likewise has induced the U.S. CBP to use the inventions claimed by the '701 Patent, or otherwise make and use the inventions through combining non-staple articles lacking substantial non-infringing uses, such as the U.S. CBP's installation, testing, and use of the Accused Viken Scanners in accordance with Viken's direction, training, and instruction, *see, e.g.*, Ex. C at 15–16.

145.    The preamble of claim 1 of the '701 Patent recites: "An inspection system for inspecting an object characterized by motion in a direction with respect to the inspection system, the system comprising." (Ex. G at 6:43-45.)

146.    Viken makes, uses, sells, and/or offers for sale, or induces others to make and use, an inspection system for inspecting an object characterized by motion in a direction with respect to the inspection system.

147.    For instance, and without limitation, the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX is an inspection system for inspecting an object (e.g., a vehicle or drugs contained within) characterized by motion in a direction with respect to the inspection system (e.g., the motion of a vehicle/the contents of a vehicle as it moves through the Osprey-EVX portal or through the Osprey-UVX in combination with the Osprey-EVX), *see, e.g.*:



https://www.krgv.com/videos/cbp-to-enhance-scanning-technology-at-southern-border-land-ports/ (last accessed on October 19, 2020).

148.    The first limitation of Claim 1 of the '701 Patent recites "a first pencil-beam source

for providing a first beam of penetrating radiation of specified cross-section directed in a first beam direction substantially transverse to the direction of motion of the object." (Ex. G at 6:46-49.)

149.    The Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX includes a first pencil-beam source for providing a first beam of penetrating radiation of specified cross-section directed in a first beam direction substantially transverse to the direction of motion of the object.

150.    For instance, and without limitation, the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX includes a first pencil-beam source (e.g., any one of the sources at the top, bottom, left, or right of the portal) for providing a first beam of penetrating radiation (e.g., each source provides a penetrating X-ray beam). Each beam has a specified cross-section (e.g., as defined by the slit in the chopper wheel as it masks the fan beam to create a pencil beam), which, on information and belief, is related to the spatial resolution of the image created. The pencil beam is directed in a first beam direction (e.g., at the top, at the bottom, at the left, or at the right of the vehicle) substantially transverse to the direction of motion of the object (e.g., the motion of the vehicle or drugs as they move through a portal), *see, e.g.*, Ex. C at 15; Ex. D at 5 ¶ 19.

151.    The second limitation of Claim 1 of the '701 Patent recites "a second pencil-beam source for providing a second beam of penetrating radiation of specified cross-section substantially coplanar with, and substantially perpendicular to, the first beam of penetrating radiation, directed in a second beam direction, and temporally interspersed with the first beam of penetrating radiation." (Ex. G at 6:50-55.)

152.    The Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX includes a second pencil-beam source for providing a second beam of penetrating radiation of

specified cross-section substantially coplanar with, and substantially perpendicular to, the first beam of penetrating radiation, directed in a second beam direction, and temporally interspersed with the first beam of penetrating radiation.

153.    For instance, and without limitation, the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX include a second pencil-beam source (e.g., any other one of the sources at the top, bottom, left, or right of the portal not selected as the "first pencil-beam source") for providing a second beam of penetrating radiation (e.g., each source provides a penetrating X-ray beam). Each beam has a specified cross-section (e.g., as defined by the slit in the chopper wheel as it masks the fan beam to create a pencil beam), which, on information and belief, is related to the spatial resolution of the image created. The pencil beam is substantially coplanar with and substantially perpendicular to the first beam of penetrating radiation. For instance, Osprey-EVX (and the -EVX with the -UVX) is described as a "portal" where the sources that illuminate the vehicle from the top, bottom, left, and right sides are substantially coplanar with and substantially perpendicular to each other. The second pencil beam is also directed in a second beam direction (e.g., at the top, at the bottom, at the left, or at the right of the vehicle). (*See supra* ¶ 150 and related support).

154.    On information and belief, the second pencil beam is temporally interspersed with the first beam of penetrating radiation to reduce cross talk or interference at least at detectors that may pick up backscatter and/or transmission radiation from multiple sources simultaneously.

155.    The third limitation of Claim 1 of the '701 Patent recites "a plurality of scatter detectors each scatter detector of which is disposed so as to detect radiation scattered from both the first beam and the second beam by any scattering material within the inspected object and for generating a scattered radiation signal." (Ex. G at 6:56-60.)

156.    The Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX includes a plurality of scatter detectors each scatter detector of which is disposed so as to detect radiation scattered from both the first beam and the second beam by any scattering material within the inspected object and for generating a scattered radiation signal.

157.    For instance, and without limitation, the detectors are disposed around the portal and used to detect scattered radiation from the X-ray sources to create a two-dimensional image of the top-, left-, right-, and bottom-views of the vehicle, *see, e.g.*, Ex. C at 15; Ex. D at 5 ¶ 19.

158.    The fourth limitation of Claim 1 of the '701 Patent recites "a controller for creating an image of the scattering material based solely on the scattered radiation signal." (Ex. G at 6:62-63.)

159.    The Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX includes a plurality of scatter detectors each scatter detector of which is disposed so as to detect radiation scattered from both the first beam and the second beam by any scattering material within the inspected object and for generating a scattered radiation signal.

160.    For instance, and without limitation, Viken states that the Osprey-EVX portal system provides views from the top and sides of a vehicle. When the Osprey-UVX is used in combination with the Osprey-UVX, the system can also provide views from under a vehicle.

161.    On information and belief, the controller creates an image based solely on the scattered radiation signal, as the Accused Viken Scanners use backscatter technology.

162.    The preamble of claim 11 of the '701 Patent recites: "A method for inspecting an object, the method comprising." (Ex. G at 11:1-2.)

163.    Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the

U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs a method for inspecting an object, for instance, and without limitation, a vehicle, or drugs or other contraband within the vehicle.

164.    The first limitation of claim 11 of the '701 Patent recites: "illuminating the object with penetrating radiation formed into a first pencil beam." (Ex. G at 8:3-4.)

165.    Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of activating an array of discrete X-ray sources in a prescribed temporal pattern so as to illuminate the object with a beam varying in spatial orientation.

166.    For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX illuminates a vehicle or drugs within with a penetrating X-ray pencil beam from the top, bottom, left, or right side as the vehicle drives through a portal, *see, e.g.*, Ex. B at 2 ("In addition to the Osprey-UVX, early in 2020 the company will launch and begin demonstrations of a new drive-through portal scanner, the Osprey-EVX, which will complement the Osprey-UVX."); Ex. D at 5 ¶ 19; and



https://www.krgv.com/videos/cbp-to-enhance-scanning-technology-at-southern-border-land-ports/
(last accessed on October 19, 2020).



https://www.krgv.com/videos/cbp-to-enhance-scanning-technology-at-southern-border-land-ports/
(last accessed on October 19, 2020).

167.    The second limitation of claim 11 of the '701 Patent recites: "illuminating the object

with penetrating radiation formed into a second pencil beam, the second pencil beam substantially

coplanar with the first pencil beam, at a fixed and substantially perpendicular orientation with

respect to the first pencil beam, and temporally interspersed with respect to the first pencil beam."

(Ex. G at 8:3-4.)

168.    Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in

combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of activating an array of discrete X-ray sources in a prescribed temporal pattern so as to illuminate the object with a beam varying in spatial orientation.

169.    For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX illuminates the object (e.g., the vehicle or drugs within) with penetrating radiation (X-rays) formed into a second pencil beam (e.g., at any other one of the top, bottom, left, or right of the portal not selected as the "first pencil beam"). The second pencil beam is substantially coplanar with the first pencil beam at a fixed and substantially perpendicular orientation with respect to the first pencil beam. For instance, Osprey-EVX (and the Osprey-UVX with the Osprey-EVX) are described as a "portal" where the sources that illuminate the vehicle from the top, bottom, left, and right sides are substantially coplanar with, fixed, and substantially perpendicular to each other. On information and belief, the second pencil beam is temporally interspersed with respect to the first beam to reduce cross talk or interference at least at detectors that may pick up backscatter and/or transmission radiation from multiple sources simultaneously. (*See supra* ¶¶ 150-154 and accompanying support).

170.    The third limitation of claim 11 of the '701 Patent recites: "detecting radiation from the first pencil beam and the second pencil beam scattered by the object with at least one detector that detects scattering from both the first and the second pencil beams to generate a scattered radiation signal." (Ex. G at 8:11-16.)

171.    Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the

U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of activating an array of discrete X-ray sources in a prescribed temporal pattern so as to illuminate the object with a beam varying in spatial orientation.

172.    For instance, and without limitation, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX detect radiation from the first pencil beam and the second pencil beam scattered by the object with at least one detector that detects scattering from both the first and the second pencil beams to generate a scattered radiation signal. For instance, the detectors are disposed around the portal and used to detect scattered radiation from the X-ray sources to create a two-dimensional image of the top-, left-, right-, and bottom-views of the vehicle. (*See supra* ¶¶ 156–157 and accompanying support).

173.    The fourth limitation of claim 11 of the '701 Patent recites: "imaging the object solely on the basis of the scattered radiation signal." (Ex. G at 8:17-18.)

174.    Viken, by testing and demonstrating the Osprey-EVX and/or the Osprey-UVX in combination with the Osprey-EVX, and/or by inducing actual or potential customers such as the U.S. CBP (as well as other prospective customers) to use the Osprey-EVX and/or Osprey-UVX in combination with the Osprey-EVX, performs the method step of activating an array of discrete X-ray sources in a prescribed temporal pattern so as to illuminate the object with a beam varying in spatial orientation.

175.    For instance, and without limitation, Viken states that the Osprey-EVX portal system provides views from the top and sides of a vehicle. When the Osprey-EVX is coupled to the Osprey-UVX, the system can also provide views from under a vehicle. On information and belief, the Osprey-EVX and the Osprey-UVX in combination with the Osprey-EVX creates an

image solely on the basis of the scattered radiation signal. (*See supra* ¶¶ 159–161 and accompanying support).

176.     AS&E has suffered and continues to suffer damages and irreparable harm as a result of Viken's past and ongoing infringement of the '701 Patent.

177.     Viken's infringement of the '701 Patent has been, is, and continues to be willful, including Viken's willful infringement of at least claims 1 and 11. (*See supra* ¶¶ 53–55, 58–60). Viken has known about the '701 Patent (or was willfully blind to acquiring knowledge without explanation), as well as AS&E's infringement allegations, but nevertheless willfully continued its infringing activities.

178.     Unless Viken's infringement is enjoined, AS&E will continue to be damaged and irreparably harmed by Viken's past and ongoing acts of infringement, including, for example, through price erosion, loss of industry goodwill, impact to brand recognition and value, and the loss of irreplaceable business opportunities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AS&E respectfully requests that this Court enter judgment in its favor and against Defendant Viken as follows:

1.     Declaring that Viken has directly infringed one or more claims of the Asserted Patents, literally or under the doctrine of equivalents;

2.     Declaring that Viken has indirectly infringed one or more claims of the Asserted Patents, literally or under the doctrine of equivalents, including through its inducement of actual or potential customers (such as the U.S. CBP) to make and use the inventions covered by the Asserted Patents;

3.     Declaring that Viken has indirectly infringed one or more claims of the Asserted

Patents, literally or under the doctrine of equivalents, including through its contribution to the infringements by its actual or potential customers (such as the U.S. CBP) to make the inventions covered by the Asserted Patents;

4.      Finding that Viken has willfully infringed one or more claims of the Asserted Patents;

5.      Awarding damages to compensate AS&E for Viken's infringement, including damages pursuant to 35 U.S.C. § 284, including any and all profits lost as a result of Viken's infringement and other financial harm suffered by AS&E, including price erosion damages, but in no event less than a reasonable royalty, together with all pre-judgment and post-judgment interest and costs;

6.      Declaring this case exceptional, and awarding costs and expenses in this action, including an award of AS&E's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

7.      Entering a preliminary and permanent injunction barring Viken's infringement, pursuant to 35 U.S.C. § 283 as well as this Court's discretion in equity; and

8.      Granting such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## JURY DEMAND

AS&E hereby demands a jury trial on all issues properly tried before a jury.

Dated: October 19, 2020                      Respectfully submitted,

By: /s/ Melissa Nott Davis
Melissa Nott Davis (Bar No. 654546)
mndavis@shb.com
SHOOK HARDY & BACON L.L.P.
125 Summer St., Ste. 1220
Boston, MA 02110
Phone: 617-531-1411
Fax: 617-531-1602

B. Trent Webb (*pro hac vice* forthcoming)
Aaron E. Hankel (*pro hac vice* forthcoming)
Lauren E. Douville (*pro hac vice* forthcoming)
Samuel J. LaRoque (*pro hac vice* forthcoming)
SHOOK HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Phone: 816-474-6550
Fax: 816-421-5547

Attorneys for Plaintiff
*American Science & Engineering, Inc.*